Okay, good morning. I'm Steve Block for Appellant Corvus Energy. Let me start to take 30 seconds to rehash the factual and procedural history of this, which is at the heart of the issue. Foss Maritime, a plaintiff in this case originally, had a joint venture with Aspen Kemp & Associates, a.k.a., to build hybrid tugs, kind of like the cars that work on engines and electricity. Foss, a.k.a., the joint venture, hires Corvus to construct a battery pack for one of these tugs, and a.k.a. is responsible for the integration system between the battery pack and the engine. a.k.a. disregards Corvus's charging algorithm instruction. A fire erupts on the tug, and Foss is damaged to the extent of its damage to its tug. Foss sues Corvus, but not its JV partner, a.k.a. Corvus pleads a.k.a. in a third-party action seeking indemnity, and 10 months later Foss brings a direct action against a.k.a. and some number of weeks after that immediately settles. The district court dismisses the indemnity action, which is both a cross-claim and a third-party action on summary judgment. Under this scenario, there has never been any kind of factual determination of any liability or fault. We don't know who might be responsible or liable as a factual matter. The law that the district court applies that a.k.a. urged does not contemplate this kind of factual procedural history. At summary judgment, and in the appeal here, a.k.a. is just arguing, well, there's no right to indemnity by one joint feeser to another. There's no determination, of course, that there's joint tort feesers, and if Foss hadn't sued a.k.a., then a.k.a. couldn't settle with it and a.k.a. couldn't argue that it was a joint tort feeser. In other words, the JV partners created an argument that Corvus and a.k.a. were joint tort feesers. The Foss a.k.a. settlement agreement almost definitionally could not have been at arm's length. Both had a stake in each other's positions and outcomes in this litigation. Counsel, can I ask you a question? Sure. No matter what happened in this case, whether it went to trial or whether it settled, in the end, your client would be liable for the proportionate share, if any, of the damages caused to Foss, right? If any. If any. That's right. Right. So when your client settled, your client settled for that amount that it thought it might possibly be found to be liable if the case went to trial. That's incorrect, Your Honor. It is? That's incorrect. Okay. So why would you settle for something more than that? Why didn't Corvus just settle, and I'll take it a step further than the question. If we didn't believe we were liable, if we think we're totally fault-free, why would we have settled? Well, the answer to that question is that this is a highly technical case. It would have cost well into the high six figures to litigate it because of the expert testimonies, demonstratives, difficulty in presenting a case like this. If Corvus were to have prevailed, we think we're zero at fault. Why not just try it out? Prove it. Then there's no need for indemnity. If we'd done that, if we'd gone that route, we would have been out of pocket, something like $700,000, $800,000 in legal fees. But we could have settled for much less than that. In the real world, that's the way it works. An indemnity, based on law, is applied in admiralty and every other field. An indemnity is entitled to recover its attorney's fees from an indemnitor. It's the basic law school ABC rule, if you remember. It reads, when A becomes embroiled in litigation with C because of B's wrongful act, A can recover attorney's fees from B. Can I ask you another question? Yeah. Was there any reservation of rights in the agreement between Corvus and Foss, whereby Corvus and Foss agreed that Corvus would have a right to seek indemnity from AKA? Well, we could not enter into an agreement with one party that would impact the rights of another. You can't reserve your rights in a claim against one party to proceed against another. Well, but if your contention is that they were joint venturers. They're joint venture partners. They have common interests. They have a contract, but they're not the same entity. They're still separate legal entities that they could make claims against. For that very reason, Foss was able to sue AKA in name. Can I ask you, does your argument today turn on the assumption that you are 0% at fault? Yes, it does, Your Honor. Okay. So if you were even 10% at fault and AKA was 90% at fault, then the arguments you're making here kind of. . . That's right. Well, if it were determined that Corvus is liable by way of negligence to some percentage and only negligence and. . . Well, why not a strict product side? Because the cases don't say that. The foundation, the seminal cases that proclaimed that contribution is not available. . . Now you're talking contribution, not identity. It's been held multiple times that that principle only applies to joint tort feasors. There's no such thing as joint contract breachers. So if Corvus was liable to the extent of 10% based on breach of contract, which I might argue is a very likely outcome because of the economic loss rule. We could argue we can't be held liable in negligence only in contract. And AKA is liable 90% or whatever based on its breaches of contract. Then all these rules about joint tort feasors not having the capacity to seek contribution from each other would not apply. But at the time of the settlement with FOSS, Corvus declined or did not stipulate to whatever the amount might be that could have been found as its share of responsibility. I guess your position is the only thing they would stipulate to is that we're not responsible for anything. Exactly. The settlement agreement provides we disavow, we do not concede by this settlement agreement that we are all liable. We are settling this strictly to avoid the costs and uncertainty of litigation. It's in there. But, you know, the point that the rights that parties that are settling can reserve against each other don't impact the others, no more so than AKA's reservation of its rights with Corvus that it is not seeking to settle claims that FOSS might have against Corvus. I guess what's troubling me, and maybe it's because of the fact that there isn't any precedent that's on point here directly, your client is seeking essentially to recover the amount that it voluntarily paid to FOSS in order to resolve the case, but then seeking to hold this third party liable under, I guess, what, an implied theory of indemnification, even though there's no contract between AKA and Corvus? That's right. Well, in other fields of law in Washington State, for example, if AKA had settled with FOSS under these circumstances to try to get out of any potential indemnity liability or even contribution liability to the other defendants, there would have been a reasonableness hearing to see if this is a reason. Right, right, right. And the law didn't apply, you know, contemplate or allow for that here. And so we settled with Corvus. So what are we doing? Are we creating some sort of an equitable remedy in the law of indemnification or the law of— We're not creating anything. The law is as it is already, and I'm just asking for it to be interpreted. And, yes, we are certainly in equity here. That's what it's all about. I mean, look at the global equities of this scenario where if it's true that Corvus didn't do anything wrong and wanted two things, first, to avoid high litigation costs that it would not otherwise recover and wanted to perhaps, you know, make its customer, FOSS, that clearly has suffered some harm by way of its tug, wanted to get it out of the— Was there any thought given at the time of settlement? I don't even know what mechanism you would invoke to trigger this. Was there any thought given to asking the district court to conduct a quasi-reasonableness proceeding in order to determine proportionate responsibility had the matter proceeded to trial? I think there's actually case law that—and I believe it's actually Ninth Circuit case law that says that while reasonableness hearings are useful for this purpose, they're not contemplated in admiralty. Can I ask you, one of the reasons for the Amcly decision was to minimize ancillary litigation and to promote settlement and to promote economy and litigation. How would your being able to pursue AKA promote those goals? If we didn't understand that we would be able to pursue indemnity against AKA, we would not have settled with FOSS, the whole litigation would have continued, then that economy would not have been enjoyed. But, you know, the FOSS, who clearly has losses, would have to be drugged through a long trial that both parties would have to, you know, expend enormous resources on. And then you'd be able to seek indemnity or contribution from AKA for those costs. Exactly. But you chose not to do that. We chose not to do that because we didn't want to have to pay $800,000, $900,000 in a trial and make FOSS do the same. And then, you know, truly we would have ended up with an indemnity claim but not know whether we could enforce it. So to follow up on Judge Benitez's question, how does that further the policy of the law to favor settlements and resolution of disputes rather than leave sort of hanging in the air a potential claim against this third party when everybody thought they had settled and resolved the case? Well, because we would not have, if this, that the trial court is affirmed, it would mean that we should not have settled with the plaintiff. We should have taken that through trial. Well, it may mean that you, if it were really important for you, I don't know how you'd do it, but I suppose you could have stipulated to a private arbitration to, in essence, to give you a proportionate share determination. Well, I mean, if we could get the parties to agree to such a thing, but I don't think that that's before the court. I mean, you can't. Yeah, go right ahead. I'm just confused about your rationale for not going forward in the case that FOSS brought against you is that you didn't want to incur all these litigation costs, right? It would cost too much to litigate. Among others, yes. The uncertainty of the litigation. Right, but I guess I don't understand. You said when I asked you earlier that your ability to get indemnity from AKA depends on basically you're having zero percent liability and they're being completely at fault. So if we were to reverse and allow your action against AKA to go forward, don't you have to litigate the entire dispute anyway? I don't see what savings are, since there's no contract. No, we don't. The only thing we would have to litigate at that point, that's the whole point of settling. It would narrow the issue significantly. Instead of litigating all of FOSS's damages, the circumstances of the integration system, all that kind of thing with three parties, instead we just have one issue to litigate, which is the sole cause of the fire being the AKA's disregard of the charging algorithm instruction that Corvus gave it on that one issue. And then the damages would be the settlement amount instead of the much higher. I'm sorry. I mean, that assumes that Corvus has no responsibility at all. In other words, AKA would be going into this proceeding, trial, whatever you want to call it, with one hand tied behind its back, that all we're determining here is whether or not you disregarded the algorithm and therefore you're 100 percent liable. And to me, that doesn't seem like a very fair proceeding. It seems to me if you're going to go to trial, then you've got to run the gauntlet. And maybe the fact finder is going to decide that Corvus was responsible for more than 0 percent of the damages. Well, AKA would be free to argue that. And AKA's exposure would not be the huge litigation cost. But why shouldn't AKA be allowed to bring in all that evidence that you say is going to take a lot of time and a lot of money? Well, the one thing it could do is argue that the settlement that we paid and for which we seek indemnity was too high because the evidence didn't demonstrate that. Well, your theory of recovery is that you get 100 percent of what you paid FOSS in settlement. So that is a determination, at least from Corvus's point of view, that it was responsible for none of it. And the only reason it occurred, let's say it was a million dollars, is because it was cheaper to pay the million dollars or $500,000 than go to trial. I'm not sure I understand that, but Corvus settled with FOSS for something less than the amount of the claim. If that amount was still too high in an indemnity action against AKA, if it were established that AKA was solely at fault, then AKA could still argue that we're not liable for the full amount of your indemnity because you paid more than the claim is reasonably worth. Okay. You have actually run over by four and a half minutes. I'm sorry. So let's hear from AKA. Your Honors, may it please the Court, my name is Don McLean and I represent AKA in this matter. This case is actually fairly simple. Although the cause of the fire is very technical and probably beyond my scope to understand fully, this is a fire aboard a tugboat. As a result of the fire, the owner of the tug, FOSS, was damaged. FOSS then instigated a lawsuit against Corvus and it instigated a lawsuit against AKA, saying that they were jointly and severally liable under theories of contract, tort, and strict liability. That is fundamentally the same thing that happened in the Amcly case. If you read the Fifth Circuit Court of Opinions, it was a contract and tort case. If this case had gone to trial, what would the result have been? The fact finder would have made a finding of fact as to what was the cause of the damage and what, more importantly, what was the proximate cause of the damage. If the sole proximate cause of the damage was AKA's fault, then AKA would be 100% responsible for the loss. However, that didn't happen. Everybody agreed to settle the case for whatever reason. They settled it to avoid attorney's dues. They settled it because they had a preexisting basis with the customer. But they settled it to bring finality within the meaning of Amcly. Can I ask you this? Yes. So your position is that let's say that I'm the party in Corvus's shoes and I am absolutely convinced that I've done nothing wrong and that your client is 100% to blame for the accident, right? Your position is that if I want to have any hope of recovering even a dollar from you, I have to go through a full-blown trial in order to have the liability allocation determined? I can't sort of truncate things by just trying to settle on the best deal I can? In a sense, I'm kind of mitigating your damages by not going to trial and having the full amount assessed against me so that then I'd have to collect 100% of that from you. Is that the rule that you're advocating? Well, generally, that's how the legal system works. To get a full recovery, you have to litigate the case. You settle to avoid that, whether it's because of cost or because of preexisting relationship. Why wouldn't we want to establish a rule, though, that would encourage parties to settle and not by doing – your position is that by settling, you basically foreclose your ability to get any kind of indemnity recovery. Doesn't that discourage settlement in the underlying suit? Okay, let's just figure out exactly where the parties stood when AKA settled. AKA had settled. There was still a lawsuit going forward between FOSS and Corvus. That case goes to trial. The court makes a factual finding as to who was the cause of the fire. Approximate cause applies to the contract, tort theories. I submit to you that if the case is litigated, that breaches of contract will be decided on a comparative fault basis. SOFIC deals with approximate cause for breaches of warranty. So it basically is going to be a comparative fault situation. The fact of the matter is Corvus and FOSS had a contract. Under that contract, the prevailing party was entitled to attorney's fees. If the case went to trial and Corvus prevailed that they were not the approximate cause of the loss, it was solely the fault of AKA, then they would get their attorney's fees paid by FOSS. They settled the case on the basis that there was a risk. Let's say the court agrees with Corvus in this matter and decides that indemnity actions are possible between joint contract parties, even though it should be decided on a comparative fault basis. That means we go back and we retry the case that has been settled. They throw their settlement funds in and ask for attorney's fees. I can tell you I didn't believe that it was a viable theory, so we didn't claim indemnity against AKA, but if the court says that because there's contracts, then we're going to bring an indemnity claim against them. So the court is going to be making a decision as to who was at fault in this case, with the understanding that if one party is 100 percent at fault, they have to pay all of the damages from the settlement and the other side's attorney's fees. That does not seem to endanger wanting to settle. The fact of the matter is when Corvus settled, they were already aware that AKA and FOSS had settled. We had filed the motion for summary judgment. They already knew we were taking the position that they didn't have a claim. As part of the settlement, they basically decided that the risk was too great and that they could make an argument based on indemnity. And again, let's just take a look at the cases. What is contribution and indemnity? What is the basis? They take snippets of cases out of context and say, hey, we're a fault-free defendant and that we, therefore, are entitled to indemnity. Counsel, since you're going to now talk about the cases, let me ask you about In Essence Maritime, which is a case cited by Corvus in their brief. Can you distinguish that In Essence Maritime case to your case? I'm sorry, I didn't hear which case was that. In Essence. In Essence Marine Holding. In Essence, that is a different situation. That there was a global settlement. The settlement basically said these groups of tortfeasors are going to settle a claim and that, therefore, this is how much everyone's going to pay. The email correspondence between the attorneys indicated there had been no agreement as to who would pay what. And, therefore, there was a global settlement with a global figure and it basically left open the issue of who was responsible for that global settlement. The same thing could have happened here. Corvus and AKA could have gone to FOSS and said, hey, we agree that the settlement should be this amount and we will reserve the right to argue between ourselves who is responsible for that. That is a contribution case. Once again, under Amclyde, once we settled with FOSS, then that meant that the proportionate fault of us would not be Corvus's responsibility and the only portion of the case that Corvus was settling was its own risk of liability. The court's job and the trial court's job is not to revisit settled issues. There was a claim against Corvus as a tortfeasor. They settled that claim based on risk. The court is not supposed to decide what was settled, what was not settled. That is part of the purpose of settlements, that each side can decide what the issues are, where they will win, what they won't win. It's a complex calculus that basically Corvus is asking to relitigate. They were aware that we settled when they did. They could have taken it to trial. This is a case that is pretty much on point with Amclyde. Amclyde dealt with contract and tort remedies and they decided that it should be decided on a contributory fault basis and that each party is only responsible for its portion of the damages, which is what would have happened here if the case was tried. Excuse me. In the Amclyde case, there had been a trial, right? There was a trial on the merits. Correct. But there was no trial on the merits in this case. Because Corvus decided to settle. Right. I understand. So in essence, this would be sort of a case of first impression that would extend Amclyde to cases where there has not been a trial on the merits, right? Well, I guess yes and no. I mean, because it's not extending Amclyde to cases where there's not been a trial on merits. It is implying Amclyde when there's multiple defendants accused of being responsible for damage. Those cases settle on a regular basis. So if you're telling me under Amclyde, if I settle a case, I'm done. If the other side goes to trial, the other defendant goes to trial. But if I settle a case and the other defendant decides to settle the case, Amclyde doesn't apply, and they can litigate it, that doesn't make any sense. Once the case is settled, the fact that another defendant settled doesn't all of a sudden open up your settlement. That doesn't make any sense from a practical point of view. Can you address, however you want, just the suggestion that there was something sort of collusive about the way FOSS ended up bringing your client in, and then there was a pretty quick settlement after that? From the outside, it does look suspicious, and so I'd love to hear what you have to say about that. Okay, well, I guess it's part of human nature to believe in conspiracies. There's a book, Foucault's Pendulum. We deal with them all the time. Foucault's Pendulum, Umberto Eco. Basically, there was a medieval document found that one person thought was proof of the Knights Templar. His girlfriend, however, decided it was just a shopping list. Both theories were equally compatible with the list. In this situation, yes, we have a business relationship with FOSS. Corvus has a business relationship with FOSS. The issue is legal. Legal minds don't deal with conspiracy. They deal with facts. Okay, the fact is, thanks for educating me about the nature of conspiracy theory. The fact is that I assume when FOSS initially filed its suit against Corvus, it knew something of the circumstances under which this fire occurred. It certainly knew that your client was right in the middle of it, yet for, I can't remember how long, for 10 months was it that litigation proceeded without your client being brought in? Why did something in that intervening 10 months change in terms of why FOSS all of a sudden realized, oh, my God, AKA has much greater exposure than we thought. Let's bring them in. Okay, well, let's just take a quick step back. There was a report that was referenced in the thing that basically shows fault on both parties' side. A third-party claim was brought against. That report was available. I can't remember the timing now. That report, was it available at the time that FOSS brought its initial suit? Yes. Okay, so that's what I'm saying. That report implicated both of you, all of you all, right? And so why it just seems suspicious that FOSS would have targeted its non-joint venture partner very soon after the cross-claim or the third-party claim is brought against you all. FOSS all of a sudden wakes up and says, my God, we need to go after AKA. And then quickly after that, there's a settlement. That just seems very suspicious. Again, the issue is what were the facts of the case? There was a fire. There is no evidence of a conspiracy. Suspicion is basically probably what happened was that Corvus' attorney probably started making a fairly good argument that the court may end up coming to a conclusion that AKA is solely at fault, at which point in time, FOSS, as any prudent litigator would do, would be, yeah, well, I better include a claim against them because the last thing in the world I want to do is bring a claim against a defendant and find at the end of the day that I not only get nothing in return, I'm responsible for their attorney's fees. That's what a prudent litigator would do. But it knew all of that at the very outset of the case because it had the report. Again, I don't know what FOSS was doing. There's no evidence that there was a conspiracy that said, you don't have to sue us because we'll take care of something. The fact of the matter is that is pure speculation. There's no evidence to that. It is suspicious, but the rule of the court is that when a I was hoping you could say something that would dispel the suspicion, but you apparently can't. I'm not sure it's relevant to the legal issues before us. I was just trying to get a better read on the facts. I frankly was not involved in the litigation at that point in time. And, again, once the amended complaint was filed, that's the document that controls the litigation. I don't know what FOSS was thinking. I don't know why they decided to. It may have been for business reasons. But, again, people do things for business reasons on a regular basis. The issue is there is no nefarious plot to try and get Corvus responsible for more than its proportionate share of damages. And that's something they have to point to, that there's some sort of fraud on the court by this joint venture. Again, joint venture is a bit of a red herring in this case because, first of all, I don't think it was argued in the trial court, but even if it was, if it's a joint venture, it becomes its own legal entity. And if AKA and FOSS, as a joint venture, contracted with Corvus, then that's the contract that deals with the relationship between AKA and Corvus. There's no evidence of that. The evidence is that FOSS entered into a separate contract. Let me interrupt you just a second. So if, in fact, there was a joint venture between AKA and FOSS and FOSS settles with Corvus, doesn't that extinguish any liability that AKA would have because Corvus has, in fact, settled with the joint venture? That is my position. And, again, that's what I said in the brief, that if the joint venture is the entity that entered into the contract, and, again, there's no evidence of that, then the terms of the contract and the settlement would determine the rights. We don't have the settlement in front of us. It, in essence, would be as if Corvus, that has now settled with FOSS or the joint venture, is now once again suing the joint venture, essentially, right? Yes. That's your argument. Yes, that's my argument. But the fact of the matter is, even if there was a joint venture, in all likelihood, the contract with Corvus was outside of the joint venture, and the fact of the joint venture, other than being suspicious, is it doesn't make any difference because the legal entities are separate. It's not the joint venture that entered into a contract with Corvus. It is FOSS. FOSS sued. Don't you actually have a better argument, though, if you argue that it was a joint venture? I agree we do have a better argument, but we weren't a joint venture, so the fact of the matter is that there may have been a joint venture for matters unrelated to the contract with Corvus, but the fact of the matter is we each had separate contracts with FOSS, and FOSS sued on those separate contracts, and that's what the record shows. The record indicates that it was a joint venture as to other things, but there's no indication that the contract with Corvus was a contract by the joint venture. Again, I haven't even talked about the whole different indemnity theories of tort indemnity, contractual indemnity, and why they don't apply, and I can go through that quite quickly. Contractual indemnity generally requires a relationship between the party being indemnified, employer, employee, bailer, bailee. The classic one in Admiralty is the Ryan Warranty of workmanlike performance between the stevedore or someone providing services to the ship and the ship owner who becomes liable for unseaworthiness and maintenance and cure without fault, and the Supreme Court has said that if that occurs, then there's an implied warranty that runs. The Davis case, I think, is instructive on this in terms of the limits of that warranty. Davis dealt with an employee of a subcontractor that was injured on a ship. As a result of that injury, he sued the ship and the general contractor. The general contractor owned a warranty of implied workmanlike performance to the ship and had to pay the ship indemnity because that's what Ryan said. The subcontractor, who was found to be 100% at fault for the accident, did not have to pay an indemnity to the general contractor because that is not within the scope of Ryan indemnity. That is not. So in the present case, I still do not understand the fundamental argument of Corvus that they could have been found at fault if the cause of the fire was 100% the fault of AKA. It seems to me that a fact finder has to find that any breach of contract, any negligence was, in fact, not the proximate cause of the fire, and they would have no damages. They settled this case based solely upon the risk to them that there would be an adverse judgment against them, and we do not have to pay for that. Thank you, Your Honors. Thank you very much. Mr. Glock, I'll give you two minutes on rebuttal. Very quickly. No case has ever held that a defendant which has not yet been found at fault may not seek indemnity from another party. No case has held that if a party is fault-free, then it may not seek indemnity. In fact, the opposite has been held. McDermott has been specifically limited to situations when there has been a finding that two or more parties are joint tortfeasors. So how do you distinguish Amclyde? Amclyde is McDermott. Okay. Same case. All right. It has been held to apply only to joint tortfeasors. That wasn't the question that it said it was going to answer. I'm sorry? When Amclyde, that was not the question that Amclyde said it was going to answer. The only thing Amclyde answered was whether a pro tanto approach should be replaced with a proportionate share approach. Well, I'm not so sure that I read the case that narrowly. It basically says in a couple of places, I'm looking at 221, I'm quoting the proportionate share rule announced in this opinion applies when there has been a settlement. And here there has been a settlement. And there is no determination of proportionate share. There was a determination of proportionate share. But there is none here. There's been none here. In essence, I read the Supreme Court as saying that once there is a settlement, we're done. Not in the case where there's been no fault and where the situation is indemnity and not. Well, if the policy of the law is to encourage settlements, isn't it more likely the case that there will not be a fact finder determining proportionate share? I mean, the whole, as we've been arguing about here for the last 40 minutes, the whole purpose of settlement is to avoid running the gauntlet of a bench trial or an admiralty or a jury. Just the opposite. If there is no right to indemnity if there's been a settlement, then that encourages parties who feel that they're 100% fault free from not settling. We would have to try this case out to show that we're not liable at all in order to avoid, you know, an argument based on McDermott that we can't seek indemnity. And then we would be much higher in attorney's fees into the case and have to seek that and then indemnity action against a third party that we don't understand may be able to pay it. I just wanted to speak. You have run out of time. I'll let you say one more sentence and then we're done. Okay. The trial court in its ruling based its determination on two Fifth Circuit cases. Hardy's statement about non-negligent tort defeasors, meaning defendants on which the law imposes responsibility even though they committed no negligent acts in the trial court ruled, Corvus is an ordinary defendant. Its liability, if any, arises from its own negligence. But not even Foss alleged that. Foss was alleging liability on Corvus' part based on negligence, breach of contract, breach of warranty, product liability, which is strict liability. These are species of liability without fault. Okay. That's it. We're done. Thank you very much. The case just argued is submitted for decision. We'll get you an answer as soon as we can. And the last case on the calendar, Nelson v. Department of Labor, is ordered and submitted on the briefs. We are adjourned. All rise. Can we hear you, all persons having consistence that the Honorable Judge of the United States Court of Appeals for the Ninth Circuit will now depart.
judges: Tallman, Watford, Benitez